IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| SHERRY WOODARD, ) | |
| ) | |
| Movant, ) | |
| ) | |
| vs. ) | Case No. 07-5103-CV-SW-ODS |
| ) | Crim. No. 03-05038-04-CR-SW-ODS |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

<u>ORDER AND OPINION (1) DENYING MOTION FOR POSTCONVICTION RELIEF
PURSUANT TO 28 U.S.C. § 2255 AND (2) DENYING CERTIFICATE OF
APPEALABILITY</u>

Pending is Movant's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255. The motion is denied, and the Court declines to issue a Certificate of Appealability.

I. BACKGROUND

Movant and nine other individuals were charged with various drug-related crimes. Seven of the defendants plead guilty before trial; Movant, Lonnie Weston (Movant's half brother), and Frances Duckett were the only defendants to go to trial.

A detailed recitation of the facts is not necessary. Movant and Weston lived in separate mobile homes on the same parcel of property. Weston's house was searched on two occasions. On the first occasion, law enforcement officers went to investigate reports that stolen vehicles were stored at Weston's house. While approaching the front door the officers saw tanks that displayed signs of having stored anhydrous ammonia, which they knew to be used in manufacturing methamphetamine. The officers obtained a search warrant and found, among other items, syringes and a methamphetamine cookbook. On the second occasion, officers came to Weston's house with a warrant for Jody, Weston's son. They believed Jody was inside Weston's mobile home, and upon knocking were met by Desa White (Weston's ex-wife and Jody's mother). White let the

officers in and, while searching for Jody, they saw numerous items related to the manufacture of methamphetamine.  The officers left and returned with a search warrant.

Evidence at trial established that Movant owned and operated the Sims General Store, and that the store purchased a large quantity of medicine containing pseudoephedrine.  The amount purchased was the maximum permitted by law and was more than could be justified by either Movant's explanation (that it was for her personal use to lose weight) or by the store's rural location – particularly in light of the absence of gasoline pumps to attract customers.  Movant stored the pseudoephedrine in the back room and directed Weston (or those picking up the pills for him) there to retrieve boxes.  Movant sold the pills to Weston at premium of nearly double the retail price.

Movant, Weston and Duckett were convicted.  Weston appealed the denials of his motions to suppress and his sentence; Movant appealed the sufficiency of the evidence and her sentence; Duckett did not appeal.  The Court of Appeals affirmed on all issues except for Weston's sentence, United States v. Weston, 443 F.3d 661 (8th Cir. 2006), and the Supreme Court denied Woodard's request for certiorari.  Woodard v. United States, 127 S. Ct. 417 (2006) (order denying petition for writ of certiorari).

## II.  DISCUSSION

At the outset, the Court observes some difficulty in analyzing some of Movant's claims because she has provided insufficient documentation or explanation.  The Government asserts her arguments should be rejected on this basis alone.  Movant contends the forms provided by the Court indicate "[n]o citation of authorities need be furnished," but the form also directs the movant to submit a separate document outlining the legal argument.  In fact, on page 10 of the form, Movant wrote that "memorandum of law and cases to follow," but nothing was filed by Movant before the Government's response.  Moreover, many of the deficiencies relate to the factual underpinnings of the arguments as well as their legal basis, and the factual matters were to be included on the form.

The Government has responded to the merits as best as it could, which is just as well because that is how the Court would prefer to see the matter handled. The Court will follow suit and analyze Movant's claims as best as it is able.

All but one of Movant's thirty grounds for relief alleges ineffectiveness of counsel. A claim of ineffective assistance of counsel is governed by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). "This standard requires [the applicant] to show that his 'trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense.'" Nave v. Delo, 62 F.3d 1024, 1035 (8th Cir. 1995), cert. denied, 517 U.S. 1214 (1996) (quoting Lawrence v. Armontrout, 961 F.2d 113, 115 (8th Cir. 1992)). This analysis contains two components: a performance prong and a prejudice prong.

> Under the performance prong, the court must apply an objective standard and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," Strickland, 466 U.S. at 690, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Id. at 689. Assuming the performance was deficient, the prejudice prong "requires proof 'that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different.'" Lawrence, 961 F.2d at 115 (quoting Strickland, 466 U.S. at 694).

Id. Failure to satisfy both prongs is fatal to the claim. Pryor v. Norris, 103 F.3d 710, 713 (8th Cir. 1997) (no need to "reach the performance prong if we determine that the defendant suffered no prejudice from the alleged ineffectiveness"); see also DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000).

### A.

Movant alleges her attorney was ineffective for failing to object to the second search of her brother's mobile home. Such an objection would have required Movant to

3

have a privacy interest in her brother's mobile home, e.g., United States v. Kuenstler, 325 F.3d 1015, 1020 (8th Cir. 2003), and Movant does not allege she had such an interest. To the contrary, the very fact that it was her brother's residence and not her residence belies the suggestion that she had a privacy interest cognizable under the Fourth Amendment, so counsel did not violate the performance prong in electing not to object. Moreover, the search's legality was upheld as to Weston, and Movant does not offer any explanation suggesting how the outcome could have been different if she raised the same objection. Therefore, the prejudice prong also is not satisfied.

B.

Movant alleges her attorney was ineffective for failing to object to the verdict director for Count I of the Indictment, which charged all ten defendants with conspiring to manufacture and distribute more than 500 grams of methamphetamine. The verdict director – Instruction Number 35 – tracks the language of both the Indictment and the statute. Movant alleges an essential element of the crime has been omitted, but does not identify the allegedly missing element.

The Court's best guess as to the content of Movant's claim involves the Indictment's accusation the defendants conspired "to manufacture *and* distribute" 500 grams or more of methamphetamine, while Instruction Number 35 employed the phrase "manufacture *or* distribute." (The emphasis has been supplied). See also Instruction No. 37. It is well-established that (1) when Congress prescribes two methods of committing a crime (as is the case here), the Indictment must charge in the conjunctive, and (2) the Government need only prove, and the Court should instruct, in the disjunctive. E.g., United States v. Pate, 932 F.2d 736, 737 n.2 (8th Cir. 1991); United States v. Klein, 850 F.2d 404, 406 (8th Cir.), cert. denied, 488 U.S. 867 (1988).

The Court discerns no instructional error, so counsel's failure to object to the instructions did not violate either of Strickland's prongs.

4

C.

Movant argues her attorney was ineffective for failing to object to expert testimony offered by Deputy Sheriff Jeff Sutherland. There are two major flaws in her argument. First, there is no requirement that an expert gain expertise through education, and there is no requirement that an expert have achieved any particular rank within the organization. A witness may be "qualified as an expert by knowledge, skill, experience, training, or education," Fed. R. Evid. 702, so Sutherland's education is not determinative of his expert status. Law enforcement officers, regardless of their rank, may be qualified to testify as experts based on their experience as law enforcement officers. E.g., United States v. Beltran-Arce, 415 F.3d 949, 951-52 (8th Cir. 2005). Second, Movant has not identified the testimony she believes was objectionable. The Court has reviewed Deputy Sutherland's testimony and found few examples of expert testimony. He described the process for manufacturing methamphetamine and the role various ordinary household items play in that process, Tr. at 24-25, 27-34, 40-41, 50, 56, 60-69, 73-74, 80, 95, 101, 113, 117, 120, 122, but testimony of this sort was permissible in light of his experience and training related to the investigation of drug crimes. There was no valid objection to be made, so counsel was not ineffective.

D.

In her fourth ground for relief, Movant contends her attorney should have objected to evidence about Billy Brassfield. Brassfield (a co-defendant who plead guilty before trial) owned the Sims General Store before she bought it, and through ownership of the store Brassfield sold Weston large quantities of pseudoephedrine. She characterizes this testimony as "bad act" evidence, but it clearly is not because the evidence did not relate to any of Movant's prior conduct. See Fed. R. Evid. 404(b). The evidence was relevant (1) to demonstrate Weston's guilt and (2) to demonstrate the store's importance in the conspiracy's operation and provide a reason why Movant

would purchase the store.  Once again, there was no valid objection to be made, so Movant's Sixth Amendment rights were not violated.

E.

Movant's store was searched in January 2002 and again in March 2002.  She alleges the second search was based on the unlawful results of the first search, and contends her attorney should have objected to the evidence found in March.  Movant's argument is legally flawed.

In January 2002, Deputy Sutherland (along with other officers) talked to Movant about a report indicating she purchased a large quantity of precursor chemicals.  She told Deputy Sutherland she bought the items for resale in her store, and Deputy Sutherland asked for permission to look inside.  In a storage/office area, Deputy Sutherland smelled and observed marijuana.  Movant withdrew her consent to search, whereupon Deputy Sutherland left and returned with a warrant authorizing him to search for "marijuana and marijuana paraphernalia."

In March 2002, Deputy Sutherland sought another warrant for the store.  The supporting affidavit, *inter alia*, references the results of the January 2002 search, including his observation of Wal-Mart receipts evidencing the purchase of large quantities of precursor chemicals.  Movant contends the January 2002 warrant did not authorize Deputy Sutherland to search for receipts, and his reliance on this observation makes the March 2002 warrant invalid.  However, in authorizing Deputy Sutherland to search for marijuana and paraphernalia, the warrant authorized a search of any place those items could be found.  If Deputy Sutherland saw receipts while looking for marijuana, there is no reason for him to ignore that fact.  Second, Movant admitted purchasing the items in question when asked in January 2002.  Finally, even if the improper information about receipts was excluded from the warrant, there would still have been probable cause to support the warrant's issuance.

6

F.

Movant claims her attorney should have objected to what she characterizes as "expert testimony" from Charles Laffoon confirming her handwriting. Movant's mistake is in assuming expert testimony is necessary to establish handwriting; to the contrary, the Rules of Evidence explicitly permit "[n]on-expert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation." Fed. R. Evid. 901(b)(1). Laffoon was a sales representative from a company that supplied convenience stores, and Movant's store was one of his customers. He identified the checks she gave him to pay for the various orders Movant placed, all of which bore her name and most of which she signed. In the course of his business dealings with Movant, Laffoon became familiar with her signature, and thus was eligible to testify on the topic. It should also be noted that Movant identified her signature on the checks during her testimony (particularly on cross-examination).

G.

In her seventh ground for relief, Movant contends her attorney should have objected to the presence of two case agents – Deputy Sutherland and Deputy Mike Quinlan – at the Government's table during trial. Rule 615 of the Federal Rules of Evidence establishes that at a party's request "the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses . . . ." The Committee Notes confirm that an officer in charge of a criminal investigation is an exception to this directive. "The purpose of sequestration is to prevent witnesses from tailoring their testimony to that of prior witnesses and to aid in detection of dishonesty." United States v. Collins, 340 F.3d 672, 681 (8th Cir. 2003). A district court has wide latitude in determining how to deal with violations of Rule 615. Id. In this case, even if a timely objection had been lodged, it is doubtful that a mistrial would have been declared. Deputy Sutherland was the first witness to testify and he was never recalled, so the Government could have simply decided Deputy Quinlan was serving as the case agent

7

and allowed Deputy Sutherland to remain in the courtroom once his testimony was completed. In addition, Deputy Quinlan's direct testimony was astonishingly brief and was primarily devoted to authenticating a chart he prepared purporting to calculate the number of pills Sims General Store purchased. Tr. at 606-10. In light of the circumstances, Movant suffered no prejudice from counsel's failure to object to the alleged violation of Rule 615.

Movant also criticizes her attorney's failure to object to Deputy Quinlan's intimation that he was a DEA agent. Deputy Quinlan described himself as "a law enforcement officer assigned to the Drug Enforcement Administration in Springfield, Missouri." Tr. at 606. The statement was correct, and it is impossible to conclude that (1) the jury misunderstood the testimony or, even if it did, (2) that Movant was prejudiced.

### H.

Movant testified in her own defense. During cross-examination, the Government's attorney asked her questions about limits on the amount of pseudoephdrine-based drugs she could sell to the public:

Q    As a convenience store operator at this time, you understood that pseudoephedrine was a restricted chemical, didn't you?

A    No, sir.

Q    You didn't understand that; that there was a state law that restricts people from selling more than two boxes at a time of pseudoephedrine?

A    Well, that don't make sense, because I bought as many as six boxes at a time from Wal-Mart, as my receipts show. So why -- no, I didn't know that, sir.

Q    That's interesting to note, but I'm really not asking how much you purchased for yourself. I'm asking how much you sold to people that came into your store. You're saying you sold above the state limit because you were not aware of it?

A       No, sir, I didn't -- I wasn't -- I didn't sell it, no, sir.  It was the store; the Sims General Store sold the pseudoephedrine.  It was ordered and it was sold, yes, sir.

Tr. at 711-12.  Movant contends her attorney should have objected because state law did not limit the amount of pseudoephedrine that could be sold in a retail establishment. Movant is incorrect.  See Mo. Rev. Stat. § 195.417.

The Government's attorney mis-spoke when he intimated the limit on such sales was two packages.  This was the limit at the time of trial, but at the time of the offenses charged the limit was three boxes.  This minor discrepancy is of little consequence because Movant purchased quantities of medication far in excess of the actual limit and she testified she was unaware of any limits on retail sales.

I.

Movant has not supplied sufficient information to allow consideration of her ninth claim.  She contends her attorney should have objected to evidence about "1100 grams of 'goo' found at Brassfield's residence" because "[n]o expert chemistry testimony was presented as to what the contents of the 'goo' actually was and how much methamphetamine the 'goo,' IF ANY, might have produced." (capitalization in original). Movant has not identified the testimony in question, making it difficult to analyze her claim.  Deputy Sutherland testified about numerous containers of powders and liquids seized from Brasffield's house, many of which were sent to a lab for analysis.  Tr. at 54-82.  In failing to specify the exhibit or testimony to which she is referring, Movant precludes any meaningful analysis.  Additionally, whether the "goo" could have produced methamphetamine was irrelevant in light of the abundant other evidence of a conspiracy to manufacture more than 500 grams of methamphetamine.

9

J.

Michele Kreitel was another of Movant's co-defendants who plead guilty prior to trial. The following exchange occurred near the beginning of her testimony:

Q    Do you recognize an individual named Sherry Woodard as being in the courtroom? Do you need to stand up to see?

A    No.

Q    You don't see Ms. Woodard? Will you look over here where the defendants are sitting? You need to stand up, ma'am. It probably would help you. Against the wall over here, do you see anybody against the wall that looks like –

A    There she is, yeah.

Q    Can you identify what she's wearing?

A    She's wearing a blue blouse.

Tr. at 286-87. Movant contends her attorney should have objected to all of Kreitel's ensuing testimony because Kreitel failed to identify her adequately. Given the multiple people sitting at counsel table, Kreitel's failure to immediately locate Movant among the crowd does not render her identification inadequate. No viable objection could be made, and counsel's failure to object did not prejudice Movant.

In her Reply Suggestions, Movant also contends the Court erred in forbidding her attorney from impeaching Kreitel with her prior conviction for forgery. There are several problems with this claim, but the Court will mention only two. First, the issue is not asserted in the initial Motion so it cannot be considered. Second, Movant misstates the Record. The Court sustained an objection to a question asking Kreitel whether "the crime of forgery necessarily involves telling a lie" because the question called for a legal conclusion, but counsel was permitted to elicit testimony that Kreitel had been convicted of this felony. Tr. at 320.

10

Case 3:07-cv-05103-ODS   Document 7   Filed 02/08/08   Page 10 of 19

K.

In her eleventh ground for relief, Movant argues her attorney should have raised a hearsay objection to portions of Craig Guinn's testimony. Unfortunately, Movant does not identify the testimony she believes constitutes hearsay. The Court's review of the Record reveals the only possible basis[1] for Movant's claim involves Guinn's testimony that Weston told him he paid twice the price for pseudoephdrine he purchased at the Sims General Store. Tr. at 434. However, Guinn was involved in the conspiracy by helping Weston procure chemicals and assisting in the manufacturing process, and on three occasions was sent to the Sims General Store to obtain pseudoephedrine. Tr. at 425-29. Weston's statements to Guinn were made during and in furtherance of the conspiracy, so they are not hearsay and an objection would have been futile. Fed. R. Evid. 801(d)(2)(E).

L.

Movant complains that her attorney failed to ask for an instruction directing the jury to consider the evidence found at Weston's house only when considering his guilt and prohibiting its consideration with respect to her own guilt. Instruction Number 27 told the jury it "must give separate consideration to the evidence about each individual defendant." Moreover, in a conspiracy case there is no requirement that every piece of evidence be connected to every member of the conspiracy. The lack of an additional instruction did not prejudice Movant's right to a fair trial, and the presence of an additional instruction would not have affected the outcome.

---

[1]Guinn also testified about a statement from Movant, Tr. at 432-33, but a party's statement is not hearsay. Fed. R. Evid. 801(d)(2)(A).

11

M.

Movant contends her attorney was ineffective for failing to object to perjured testimony, but the Record does not support her premise that perjury occurred. Her first instance involves testimony about surveillance of Weston's home. On cross-examination, Deputy Sutherland testified that he had not conducted any surveillance of Weston's home. Tr. at 188. Movant contends this is contradicted by Deputy Sutherland's Affidavit offered to support a search warrant application in March 2000, which describes events he observed at Weston's property. Whether those observations qualify as "surveillance" is doubtful at best, and they do not demonstrate Deputy Sutherland was, in the words of the attorney cross-examining him, "out there camped out with a video camera waiting to see who was coming and going and hoping to catch somebody in the act of cooking or selling" methamphetamine. Tr. at 188. Moreover, the issue is so minor in the context of these proceedings that it could not be considered material. Nothing was to be gained by objection, and an objection would not have had any effect on the proceedings.

N.

Movant contends her attorney should have objected to Deputy Sutherland's "various labels, titles and offices" because he was "only a McDonald County Sheriff." The Court does not believe Movant's description is accurate, but the point is moot: Deputy Sutherland testified about his experience, so the jury knew exactly what his qualifications were and when he earned them. Tr. at 15-16. The issues Movant raises relate to the weight of Deputy Sutherland's testimony, not its admissibility – and the weight to be accorded evidence is the exclusive province of the jury. No viable objection could be made.

Movant also complains that Deputy Sutherland was permitted to testify about his observations without corroboration. Even if this is true (which it is not, because other witnesses provided corroboration and Deputy Sutherland also provided many

12

photographs to confirm his observations), there is no evidentiary rule requiring corroboration.

## O.

Deputy Joshua Moore of the Canadian County (Oklahoma) Sheriff's Office testified about an incident in which he pursued Weston near El Reno, Oklahoma. The chase began after Deputy Moore observed Weston parked near some anhydrous ammonia[2] tanks at 12:15 the morning of October 12, 2003. Weston eventually crashed, and a physical struggle followed as Weston attempted to flee on foot. Tr. at 564-68. In the bed of the truck, Deputy Steve Carroll found materials and equipment for making methamphetamine and 150 grams of the drug. Tr. at 578-79, 584, 587-89.

Movant argues her attorney should have objected to this testimony because it occurred outside the time specified in the Indictment, which alleges the conspiracy continued to on or about March 14, 2002. Even though the events in Oklahoma occurred outside the time period charged in the Indictment, they were still admissible under Rule 404(b) to show intent, knowledge, or absence of mistake or accident. United States v. Jackson, 714 F.2d 809, 813 (8th Cir. 1983) (bad acts outside scope of indictment admissible for 404(b) purposes); see also United States v. Grimaldo, 214 F.3d 967, 977 (8th Cir. 2000), *abrogated on other grounds in* United States v. Sheppard, 219 F.3d 766, 768 (8th Cir. 2000). Moreover, this evidence was specifically referenced in Instruction Number 28, and the jury was told of the limited purpose for which this evidence could be used. Counsel's failure to object did not prejudice Movant.

## P.

---

[2]Anhydrous ammonia has a legitimate use as a fertilizer, and its storage in rural areas for this purpose is common – as is the theft of the chemical for use in making methamphetamine.

13

Movant contends her attorney was ineffective because he "never did establish that the government failed to prove its charge . . . ." This is a rather generalized claim that presents nothing for review. The Court of Appeals has already determined there was sufficient evidence to sustain her conviction, Weston, 443 F.3d at 669-70, and Movant does not suggest anything counsel should have done (or refrained from doing) in order to satisfy Strickland's performance prong.

### Q.

Plaintiff complains that her attorney told her to participate in proffer discussions with the Government's attorney even though she repeatedly and steadfastly insisted that she would not plead guilty. Arranging for a proffer in these circumstances does not automatically violate Strickland's performance prong because such a tactic may result in a reduction or dismissal of the charges. Thus, Movant's insistence in her innocence is not inconsistent with making a proffer. As for the prejudice prong, the Court notes (contrary to Movant's argument in her Reply Suggestions) her proffer could not have been used to secure the Indictment because the proffer occurred *after* the Indictment was issued.[3] Movant's assertion that the proffer enabled the Government to impeach her testimony is belied by a review of the cross-examination, which reveals that Movant was never asked to explain any contradictions between her proffer and her trial testimony.

Although it is not clear, Movant may be arguing the proffer was "used against her" at sentencing when the Court denied her relief under the "safety valve," 18 U.S.C. § 3553(f), because she failed to truthfully provide the Government with all the information she had about the offense. In short, Movant alternatively argues (1) she was entitled to the safety valve and (2) her counsel was ineffective for attempting to obtain relief under

---

[3] If the proffer occurred before Movant was indicted, the claim would fail because the Sixth Amendment right to counsel does not arise until after criminal proceedings are commenced. E.g., United States v. Edelmann, 458 F.3d 791, 803-04 (8th Cir. 2006).

14

the safety valve. Movant cannot have it both ways. Regardless, Movant's testimony at trial was sufficient to deny her relief. See Weston, 443 F.3d at 671.

### R.

Movant asserts her attorney failed bring to the jury's attention that one of her employees, co-defendant Rebecca Singleton, had equal or greater access to the psuedoephedrine in the store. The Record reveals that Singleton's status as an employee and her role in the conspiracy was discussed during the trial. E.g., Tr. at 149-51, 182, 299, 367, 433-34. In particular, Movant's testimony established the point when she explained that she was rarely at the store and left blank signed checks for her employees to use to pay vendors. Tr. at 697-704. Movant does not suggest anything counsel should have done (or refrained from doing), so there is no basis for concluding he violated the performance prong.

### S.

In another attack on Deputy Sutherland, Movant argues her attorney should have objected to contradictory statements. Counsel was not ineffective because there is no legal objection for "contradictory statements." The importance of contradictory statements (assuming there were any) is a matter for the jury to assess in determining the credibility of the witnesses. See Instruction Numbers 3 and 26.

### T.

Movant complains her attorney "did not object to testimony given by persons who held a known grudge against the person(s) they were testifying against." Even if Movant provided further detail about this issue, her claim would fail because there is no valid objection to be made to testimony offered by witnesses with "grudges." A witnesses' motives are to be considered by the jury in assessing credibility.

15

## U.

In a counterpart to the issue discussed in Part II.G, above, Movant contends her attorney should have objected to Deputy Quinlan's testimony because he was present throughout the trial. The Court's prior discussion applies to this point as well.

Movant also contends her attorney should have objected because Deputy Quinlan was not listed on the Government's witness list. While this is true, the objection would not have necessarily barred the testimony. Counsel was aware of Deputy Quinlan's involvement in the case and was not surprised by his testimony, so the lack of an objection did not prejudice Movant.

## V.

Movant contends her attorney "failed to refute key issues," but the discussion focuses on the evidence presented during trial and inferences to be drawn therefrom. Movant does not suggest anything her attorney should have done (or refrained from doing), so it is impossible to conclude counsel's performance was deficient.

## W.

Deputy Sutherland retained possession of some pieces of evidence instead of placing them in an evidence locker or other secure location.[4] Movant, believing this rendered the evidence inadmissible, claims her attorney should have objected. Movant's belief is incorrect: the law does not require seized items to be placed in an evidence locker before it can be admitted at trial. Deputy Sutherland's testimony identifying the items in question was sufficient to permit their use as evidence at trial. Fed. R. Evid. 901(b)(1)

---

[4] A typical example involves Deputy Sutherland's retention of a book entitled "Secrets of Methamphetamine Manufacturing" by "Uncle Fester," which he kept for use in instructional and educational seminars. Tr. at 35-36.

## X.

Many chemicals were seized during the execution of warrants and were introduced at trial. Some of these items – in particular, Exhibits 88-91 – were conditionally received subject to the testimony of a chemist. Tr. at 55. Later, the parties stipulated to the admissibility of the exhibits based on the chemist's report, thereby obviating the need for a chemist to testify. Tr. at 315-16. In other words, the defense attorneys understood the chemist would testify consistent with his written report and thereby establish a basis for admitting the exhibits. Rather than insisting the Government produce the chemist for this limited purpose, and lacking any real basis for disputing the chemist's findings, the defendants' attorneys elected to agree to the admission of the exhibits. The decision to pursue this course did not violate either of Strickland's prongs.

Movant also suggests a curative instruction should have been requested to tell the jury that a chemist would not be testifying. The basis and value of such an instruction in these circumstances escape the Court.

## Y.

Movant's twenty-fifth ground alleges counsel failed to prevent Deputy Sutherland from implying her guilt. The ensuing discussion suggests she believes certain evidence was inculpatory only as to Weston and not to her. The evidence she describes is evidence that (1) a conspiracy existed and (2) the object of the conspiracy was to manufacture methamphetamine. Other evidence connected Movant to the conspiracy, and there is no requirement that every piece of evidence relate to each of the defendants. There was no viable objection to be made, so counsel was not ineffective for failing to assert one.

## Z.

17

Movant argues her attorney failed to object to evidence about the amount of pseudoephdrine she sold because "[i]t was never established by invoice, vendor, expert testimony, evidence or otherwise the dosage of the pseudoephdrine . . . sold in her store." To the contrary, evidence on these matters was admitted at trial. E.g., Tr. at 455-66, 475-87, 606-09. A meritorious objection could not be made, so counsel's failure to lodge one did not constitute ineffective assistance.

## AA.

Movant's twenty-seventh ground is not clear enough to allow for meaningful consideration. She contends Deputy Sutherland's testimony about "cold medicine" was objectionable, but she does not (1) identify the testimony or (2) explain the basis for an objection.

## BB.

Movant again attacks law enforcement's entry onto Weston's property, contending they lacked justification for entering and looking for stolen cars. As stated earlier, Movant did not have an interest protected by the Fourth Amendment so any objection would have been futile. Moreover, the Court of Appeals held this entry onto Weston's property was valid. Weston, 443 F.3d at 666-67.

## CC.

Movant asserts her attorney should have objected to Deputy Sutherland's testimony about the tanks he saw by Weston's mobile home because the tanks were lost before trial. The Court doubts a viable objection exists for this situation: a person

can testify that he saw an object even if the object is not in court, and the failure to object did not violate <u>Strickland</u>'s performance prong. In any event, the tanks were a rather minor part of the evidence in this case and the failure to object did not prejudice Movant's rights.

DD.

Movant's final ground for relief alleges a biased juror was allowed to remain on the panel. During voir dire, a list of witnesses was read to the venire; among them was an individual named Kevin Davis. The juror in question, Juror Number 3, believed the list being read was a list of police officers so she did not immediately respond. Later, after the jury was sworn but before the first witness was called, she advised the courtroom deputy clerk that her husband had a cousin by the name of Kevin Davis. Juror Number 3 was brought in outside the hearing of the other jurors and questions were asked of her. It was ultimately determined that her husband's cousin was not the "Kevin Davis" who would be testifying. Tr. at 11-14.

Movant does not suggest the witness was Juror Number 3's relative or that she otherwise knew the witness. The mere fact that her husband's cousin shares the name of a witness does not draw her impartiality into question.

### III. CONCLUSION

Movant's attorney did not provide ineffective assistance, and Movant's right to be tried by an impartial jury were not violated. Her motion for postconviction relief is denied.

IT IS SO ORDERED.

/s/ <u>Ortrie D. Smith</u>
ORTRIE D. SMITH, JUDGE
DATE: February 8, 2008    UNITED STATES DISTRICT COURT